**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LASHIFY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>QINGDAO HOLLYREN COSMETICS CO., LTD. d/b/a HOLLYREN,<br><br>Defendant. | CASE NO. 6:22-CV-00777-ADA-DTG<br><br>JURY TRIAL DEMANDED |
| QINGDAO HOLLYREN COSMETICS CO., LTD. d/b/a HOLLYREN,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>LASHIFY, INC.,<br><br>Counterclaim Defendant. | [redacted] |

**<u>HOLLYREN'S OPPOSITION TO MOTION TO EXCLUDE THE TESTIMONY OF HOLLYREN'S EXPERT WITNESSES DAVID GAL AND LANCE GUNDERSON CONCERNING FALSE PATENT MARKING AND COMPETITIVE INJURY</u>**

**TABLE OF CONTENTS**

1. DR. GAL'S OPINIONS REGARDING UNDERLYING FACTS ARE PROPER ............1

2. PATENT EXPERTISE IS NOT REQUIRED FOR DR. GAL'S ANALYSIS ...................2

3. DR. GAL MAY OPINE ON CONSUMER INTERACTIONS WITH LASHIFY'S ADVERTISEMENTS ............................................................................................3

4. DR. GAL'S OPINIONS REGARDING COMPETITIVE INJURY SHOULD NOT BE EXCLUDED ............................................................................................7

5. MR. GUNDERSON'S OPINIONS THAT RELY ON DR. GAL'S OPINIONS SHOULD NOT BE EXCLUDED ..........................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accresa Health LLC v. Hint Health*,
2020 U.S. Dist. LEXIS 203427 (E.D. Tex. 2020) ....................1

*Antero Res. Corp. v. C&R Downholw Drilling*,
2021 U.S. Dist. LEXIS 263819 (N.D. Tex. 2021) ....................1, 5

*Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*,
2004 U.S. Dist. LEXIS 30712 (W.D. Tex. 2004) ....................5

*Holmes v. Reddoch*,
2023 U.S. Dist. LEXIS 56053 (E.D. La. 2023) ....................3

*Hope Organics LLC v. Preggo Leggings LLC*,
2021 U.S. Dist. LEXIS 239779 (S.D.N.Y. 2021) ....................5

*Hydrojug, Inc. v. Five Below, Inc.*,
625 F. Supp. 3d 684 (N.D. Ohio 2022) ....................5

*IQ Products Co. v. Pennzoil Products Co.*,
305 F.3d 368 (5th Cir. 2002) ....................7

*James v. Harris County*,
577 F.3d 612 (5th Cir. 2009) ....................7

*Mahindra & Mahindra Ltd. v. FCA USA, LLC*,
2023 U.S. Dist. LEXIS 124293 (E.D. Mich. 2023) ....................4, 5

*Prejean v. Satellite Cty., Inc.*,
474 F. Supp. 3d 829 (W.D. La. 2020) ....................5

*Sting Soccer Operations Group LP v. JP Morgan Chase Bank, N.A.*
2016 U.S. Dist. LEXIS 102326 (E.D. Tex. 2016) ....................1

*Ward v. Tex. Farm Bureau*,
2024 U.S. Dist. LEXIS 55914 (W.D. Tex. 2024) ....................1

# TABLE OF EXHIBITS[1]

| No. | Exhibit |
|---|---|
| 1 | Excerpts of the deposition of David Gal ("Gal Dep.") |
| 2 | Lashify's June 8, 2018, Instagram Post |
| 3 | Excerpts of the deposition of Erich Joachimsthaler ("Joachimsthaler Dep.") |
| 4 | Supplemental Expert Report of Lance E. Gunderson ("Gunderson Supp. Report") |
| 5 | 13 Ways to Increase Your Instagram Engagement Rate, cited in Footnote 191 to the Expert Report of Erich Joachimsthaler |
| 6 | How to Get More Likes On Instagram (They Still Matter), cited in Footnote 193 to the Expert Report of Erich Joachimsthaler |
| 7 | Instagram Marketing, cited in Footnote 174 to the Expert Report of Erich Joachimsthaler |
| 8 | Key Instagram Metrics You Should Use, cited in Footnote 170 to the Expert Report of Erich Joachimsthaler |
| 9 | 8-Step Guide to Using Instagram Ads [2024 Edition], cited in Footnote 175 to the Expert Report of Erich Joachimsthaler |
| 10 | [redacted] |
| 11 | [redacted] ("Survey Presentation") |
| 12 | [redacted] |
| 13 | Lashify's August 5, 2020, Instagram Post |
| 14 | Sahara Lotti's August 9, 2021 Instagram Post |
| 15 | July 26, 2022, Lashify Life Facebook post by Sahara Lotti |

[1] References to "Ex. __" are to the exhibits to the declaration of Mark Miller submitted herewith.

**1. Dr. Gal's Opinions Regarding Underlying Facts are Proper**

Lashify argues Dr. Gal's opinion regarding false patent marking should be excluded because he "seeks to testify on one of the ultimate issues in the case: whether Lashify falsely marked certain articles as patented when they were not." Mot. at 3. An expert opinion, however, "is not objectionable just because it embraces an ultimate issue." *Ward v. Tex. Farm Bureau*, 2024 U.S. Dist. LEXIS 55914, at *3 (W.D. Tex. 2024).[2] The FRE "permit expert witnesses to testify on ultimate issues of fact." *Accresa*, 2020 U.S. Dist. LEXIS 203427, at *12. *See also Sting Soccer Operations Group LP v. JP Morgan Chase Bank, N.A*. 2016 U.S. Dist. LEXIS 102326, at *6 (E.D. Tex. 2016) (expert may "assert opinions that embrace an ultimate issue to be decided by the trier of fact"). However, "[e]xperts cannot offer testimony regarding what law governs a dispute or what the applicable law means." *Accresa*, 2020 U.S. Dist. LEXIS 203427, at *12.

Dr. Gal's opinions relate to the following: (1) Lashify published advertising statements that its products were patented; (2) when they were not; (3) the level of consumer interaction with these statements; and (4) the impact of the statements on Hollyren. These are the facts underlying Dr. Gal's analyses of Lashify's patent marking and the competitive injury to Hollyren. As Dr. Gal testified, he has not "made a legal determination" regarding whether Lashify is liable for false patent marking. Ex. 1 (Gal Dep.) at 39:18-20. *Id*. at 63:16-20 ([redacted] Dr. Gal may properly testify about the facts related to the false patent marking claim, and does not seek to tell

[2] "Expert testimony is presumed permissible[.]" *Antero Res. Corp. v. C&R Downholw Drilling*, 2021 U.S. Dist. LEXIS 263819, at *5 (N.D. Tex. 2021) ("Vigorous cross-examination [and] presentation of contrary evidence" are appropriate means to attack expert testimony). "[T]he rejection of expert testimony is the exception rather than the rule." *Accresa Health LLC v. Hint Health*, 2020 U.S. Dist. LEXIS 203427, at *21 (E.D. Tex. 2020). The "court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id*.

the jury that Lashify is liable for false patent marking. *See, e.g., Accresa*, 2020 U.S. Dist. LEXIS 203427, at *19 (permitting expert "to testify about trade secret misappropriation," because he did "not seek to testify that Hint is liable to Accresa for trade-secret misappropriation"). Dr. Gal does not seek to testify on legal conclusions, and his testimony should not be excluded.

**2. Patent Expertise is Not Required for Dr. Gal's Analysis**

Lashify's argument that Dr. Gal is not qualified to offer his opinions is also misplaced. According to Lashify, Dr. Gal "has no expertise in patents" and "did no analyses as to whether any of Lashify's products are covered by its issued patents." Mot. at 4. But Dr. Gal does not need patent expertise for his evaluation of Lashify's U.S. advertisements. As part of his analysis, Dr. Gal [redacted] Ex. 1 (Gal Dep.) at 35:10-15. [redacted]." *Id*. at 35:14-23. For example, on June 8, 2018, Lashify advertised on Instagram that "Lashify is a patented system." Ex. 2 (Ad 11) at HOL0064288. Lashify did not receive a patent on its lash system until November 16, 2021, however. *See* ECF 144-10 (Joachimsthaler Report) at p. 49, Table 1. Expertise in patents is not required to compare the date of an advertisement for a product against the date a patent issued for the product. As there were no U.S. patents on the products at all at the time Lashify published the ads, Dr. Gal did not need to determine whether the patents covered the products.[3]

Lashify's marketing expert, Dr. Joachimsthaler, submitted a rebuttal to Dr. Gal's report.

[3] Lashify claims it held two *foreign* design patents on its wand when it published the patent statements. *See* ECF 144-10 (Joachimsthaler Report) at ¶¶134-135. Hollyren has filed a motion *in limine* on this issue. *See* ECF 175.

Like Dr. Gal, Dr. Joachimsthaler is not a patent expert and does not know what the patents at issue cover. Ex. 3 (Joachimsthaler Dep.) at 34:18-35:14; 50:4-6. Nevertheless, Dr. Joachimsthaler similarly opines on his interpretation of the underlying facts. *See* ECF 144-10 (Report) at ¶138 ("almost all of [the Lashify] posts cannot be considered false patent marking at all, for the following reasons"). Thus, the competing experts have offered alternative factual interpretations. The "cure for disputes regarding the facts underlying an expert opinion is not to exclude the expert testimony, but to present the contradicting facts on cross-examination and to question [the expert] on how his expert opinion might change based on an alternative set of facts." *Holmes v. Reddoch*, 2023 U.S. Dist. LEXIS 56053, at *9 (E.D. La. 2023). As such, Dr. Gal may "recit[e] the predicate facts upon which he relied when forming his conclusions," and Lashify "may utilize cross-examination to test the correctness of whatever facts [Dr. Gal] assumes as the basis for his opinions." *Id.* at *9-10. Dr. Gal's opinion should not be excluded because he is not a patent expert.

**3. <u>Dr. Gal May Opine on Consumer Interactions with Lashify's Advertisements</u>**

Dr. Gal analyzed consumer engagement with Lashify's patent statements on Instagram. He [redacted]

[redacted]

ECF 154-2 (Gal Report) at ¶18 and Exhibit F.[4]

Lashify seeks to exclude this consumer interaction analyses on the ground that it is unreliable and requires no scientific, technical, or specialized knowledge. Mot. at 5-6. According to Lashify, "no academic literature or other basis" supports "this particular methodology" (*id*. at 6), and "counting the number of consumer interactions on Lashify's Instagram posts should be excluded because it is not helpful to the jury" (*id*. at 5). Lashify is wrong on both counts. First, as the sources relied on by Lashify's marketing expert Dr. Joachimsthaler recognize, Instagram engagement is a well-known metric for gauging "how well . . . content resonates with an audience." Ex. 5 (article cited in Joachimshaler Report, Fn. 191). "Instagram engagement refers to a measure of how many people are interacting with your content." *Id*. "It considers details such as your follower count along with interactions such as likes, comments, saves, and shares." *Id*.[5] Dr. Gal used engagement because "[i]t's an indication of how much interaction consumers are having with posts" and "these types of interactions are a form of consumer engagement and interaction." Ex. 1 (Gal Dep.) at 82:2-6; 83:5-6. Dr. Gal is also aware of cases condoning "examining user comments [on social media] . . . as an indication of consumer perceptions." *Id*. at 83:6-9.

In a Lanham Act case, for example, an expert "analyzed the 95 comments on [a Facebook] post" to determine confusion. *Mahindra & Mahindra Ltd. v. FCA USA, LLC*, 2023 U.S. Dist. LEXIS 124293, *15 (E.D. Mich. 2023). The expert's social media analyses looked at "unsolicited

---

[4] Hollyren does not seek damages for time-barred posts. *See* Ex. 4 (Gunderson Supp.) at ¶6. Dr. Gal does not intend to present testimony related to time-barred statements or the dismissed false advertising claim.

[5] Dr. Joachimsthaler also relied upon the following: [redacted]

social media responses" and calculated percentages of "commenters" that indicated "a similarity" between the products. *Id*. Although the court recognized that "a formal consumer survey would ordinarily be entitled to greater weight than social media comments," it found that "the Facebook comments were a credible representation of consumer perception" and permitted the expert to testify regarding the social media comments. *Id*. at *15-16. Other courts have similarly recognized the relevance of social media interaction to consumer perception.[6]

Next, Lashify characterizes Dr. Gal's analyses as "simple arithmetic exercises," that are "not helpful to the jury." Mot. at 5. "However, there is no implicit requirement that expert witnesses make complicated mathematical calculations." *Antero*, 2021 U.S. Dist. LEXIS 263819, at *5. Courts "in fact, regularly allow expert witnesses, in a myriad of circumstances, to engage in simple calculations to develop their opinions." *Id*. Courts have "even allowed expert testimony where it was based in large part upon fairly simple mathematics and the only ascertainable assistance to the jury was that it would not have to perform these calculations on its own." *Id*.

The herculean task of systematically evaluating and recording statistics related to 1,371 social media advertisements to determine engagement with certain of the posts relative to others is something that is helpful to the jury. *See, e.g., Prejean v. Satellite Cty., Inc*., 474 F. Supp. 3d 829, 835 (W.D. La. 2020) (expert analyses is helpful even though "the calculations themselves are not difficult," because expert "expended hours analyzing various sources of information spanning a large number of pages"). "Given its complexity and cumbersome nature," Dr. Gal's "compilation

---

[6] *See, e.g., Hydrojug, Inc. v. Five Below, Inc*., 625 F. Supp. 3d 684, 703 (N.D. Ohio 2022) (Facebook comments "clearly" meant "some prospective purchasers are confused"; "while only a handful of consumers posted the comments, far more users would have viewed these comments" because they are "all publicly posted on social media websites"); *Hope Organics LLC v. Preggo Leggings LLC*, 2021 U.S. Dist. LEXIS 239779 (S.D.N.Y. 2021) ("it is not extraordinary in today's Internet age for consumers to communicate with brands in the form of online comments and reviews, and for parties to rely on such comments to present any evidence of actual confusion").

of this information and documentation into a presentable format is helpful" to the jury. *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 U.S. Dist. LEXIS 30712, at *14 (W.D. Tex. 2004). Further, Dr. Gal's numerical analysis was performed in the context of forming his expert opinions about how Lashify's marketing strategy would impact consumers based on his extensive experience in marketing. ECF 154-2 (Gal Report) at ¶¶14-18, 124. The jury may not appreciate that Instagram engagement is a measure of how content is resonating with an audience.

Finally, although Lashify criticizes Dr. Gal's consumer interaction analyses, its own marketing expert offers an alternative analyses of the Instagram posts. *See* ECF 144-10 (Joachimsthaler Report) at ¶141. According to Dr. Joachimsthaler, however, only Instagram posts that contain the patent statement in the "primary message" (*i.e.*, "the main image or video itself") should be counted in an Instagram engagement analysis. *Id.*, Fn. 213. Thus, Dr. Joachimsthaler's analyses ignores all of the posts in which Lashify made a "patented" claim in the caption or in a reply to a comment.[7] As a result, under Dr. Joachimsthaler's approach, consumer engagement is zero because Lashify made the patent statements in written text rather than in the image/video:

**Table 2: Consumer Interactions With Lashify's Primary Messages**

| | "Instances" i.e., Instagram posts | | "Consumer Interactions" i.e., Instagram views/likes | |
|---|---|---|---|---|
| Dr. Gal's total sample | 1,371 | - | 392,412,632 | - |
| Dr. Gal's claimed "instances" of false patent marking | 61 | 4.4% | 141,472,861 | 36.1% |
| Dr. Gal's posts that theoretically under Dr. Gal's faulty analysis could potentially qualify for analysis | 1 | **0.1%** | 1,127 | **0.0003%** |
| Posts that actually reference either the word "patent" or the words "patent pending" in the primary message | 0 | **0%** | 0 | **0%** |

This is a classic case of competing experts, and the jury, not the Court, should resolve the dispute.

[7] There is **no support** for Dr. Joachimsthaler's opinion regarding [redacted] The text cited by Dr. Joachimsthaler (Report, Fn. 213) does not state this. Dr. Joachimsthaler concedes he does not "know the exact research anymore on primary and secondary messages." Ex. 3 (Joachimsthaler Dep.) at 204:15-17. He does not know how the primary and secondary message characterizations in his Report were made because he "was not involved." *Id.* at 206:25-207:5.

**4. Dr. Gal's Opinions Regarding Competitive Injury Should Not Be Excluded**

According to Lashify, Dr. Gal's opinions regarding competitive injury should be excluded as "speculative and not supported by any evidence or data" (Mot. at 6-7), because they "are based solely on unverified consumer comments" and his "personal beliefs" (*id*. at 7). Lashify claims Dr. Gal "can point to no specific sale or customer lost and no consumer comment mentioning defendants by name." *Id*. Again, Lashify is wrong. Dr. Gal relies on Lashify's publicly available Instagram page. Specifically, Dr. Gal analyzed thousands of interactions related to *Lashify's* Instagram posts. Basing his opinions on Lashify's Instagram advertisements was not arbitrary. Lashify's internal documents establish that [redacted] at p. 21. [redacted] As a result, Dr. Gal based his analyses of competitive harm on actual Lashify Instagram posts and consumer engagement with them. This is not "unsubstantiated conjecture" or his own "personal beliefs," as Lashify claims. Dr. Gal's opinions are based on an exhaustive study of consumer engagement with Lashify's Instagram.

The cases cited by Lashify are easily distinguished. In *IQ Products Co. v. Pennzoil Products Co*., 305 F.3d 368, 377 (5th Cir. 2002), experts were excluded because neither conducted any "market research" and based their opinions only on "common sense." *Id*. In *James v. Harris County*, 577 F.3d 612, 619 (5th Cir. 2009), an expert was precluded from testifying that a "Sheriff's investigation and discipline for officer-involved shootings was lax" because he offered no

"empirical evidence." By contrast, Dr. Gal's analyses is based on a comprehensive study of consumer comments on Lashify's Instagram posts. Dr. Gal has identified specific instances where consumers parroted Lashify's language that competitors were thieves, copyists, and counterfeiters of Lashify's patented products. ECF 154-2 at ¶¶111-114. Dr. Gal's conclusions regarding Hollyren's tarnished reputation is not "unsubstantiated conjecture."

Similarly, there is evidence of specific lost sales and customers. Examples include the following: "I have no interest in trying a cheaper dupe to Lashify" (Ex. 13 at HOL0064847); "when I saw a complete knockoff at CVS not too long ago, I didn't even ponder buying it for a second!!" (Ex. 14 at HOL0064597); "[I] refuse to try anything else because it's a cheap imitation" (ECF 50-11 (Counterclaim Ex. K) at 5). As Dr. Gal testified, it is reasonable to infer that Hollyren lost sales based on this, as Hollyren was [redacted] Ex. 1 (Gal Dep.) at 96:21-97:2. Moreover, in response to a Lashify post *specifically targeting Hollyren*, consumers stated that "[I] refuse to buy the knockoffs," (Ex. 15 at p. 4); "I'll never go back to a competitor" (*id*. at p. 13); "I will not ever get any other lashes!" (*id*. at p. 21). This is direct evidence of lost sales, and Dr. Gal's testimony regarding competitive harm should not be excluded.[8]

**5. Mr. Gunderson's Opinions That Rely On Dr. Gal's Opinions Should Not Be Excluded**

For the reasons stated herein, none of Dr. Gal's opinions should be excluded. As such, none of Mr. Gunderson's opinions that rely on Dr. Gal's opinions should be excluded.

In conclusion, for the foregoing reasons, Lashify's Motion should be denied in its entirety.

---

[8] [redacted] ECF 153-3 (Gunderson Report) at ¶55. This analyses is not speculative.

DATED: July 8, 2024

Respectfully submitted,

BY: */s/ Mark Miller*

Hui Shen
**DORSEY & WHITNEY LLP**
1401 New York Ave. NW, Suite 900
Washington DC, 20005
Telephone: (202) 442-3000
Email: shen.hui@dorsey.com

Mark Miller
Brett Foster
Tamara Kapaloski
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Email: miller.mark@dorsey.com
Email: foster.brett@dorsey.com
Email: Kapaloski.tammy@dorsey.com

Geoffrey M. Godfrey
Erin Kolter
701 Fifth Ave., Suite 6100
Seattle, Washington 98104
Telephone: (206) 903-2390
Email: godfrey.geoff@dorsey.com
kolter.erin@dorsey.com

Paige Arnette Amstutz
Texas State Bar No. 00796136
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Fax: (512) 495-6399
Email: pamstutz@scottdoug.com

*Counsel for Defendant and Counterclaim-Plaintiff Qingdao Hollyren Cosmetics Co., Ltd., d/b/a Hollyren*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2024 the foregoing document, titled **HOLLYREN'S OPPOSITION TO MOTION TO EXCLUDE THE TESTIMONY OF HOLLYREN'S EXPERT WITNESSES DAVID GAL AND LANCE GUNDERSON CONCERNING FALSE PATENT MARKING AND COMPETITIVE INJURY** was served via electronic mail.

*/s/ Mark A. Miller*