**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| LASHIFY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>QINGDAO HOLLYREN COSMETICS CO., LTD. d/b/a HOLLYREN,<br><br>Defendant. | CASE NO. 6:22-CV-00777-ADA-DTG<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |
| QINGDAO HOLLYREN COSMETICS CO., LTD. d/b/a HOLLYREN,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>LASHIFY, INC.,<br><br>Counterclaim Defendant. | |

**HOLLYREN'S SUPPLMENTAL MEMORANDUM REGARDING
THE OPINIONS OF ITS MARKETING EXPERT, DR. DAVID GAL**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 5

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airhawk Int'l, LLC v. TheRealCraiJ, LLC*,
2017 WL 3891214 (C.D. Cal. Jan. 19, 2017) ....................6, 7, 8

*Ford Global Techs., LLC v. New World Int'l, Inc.*,
Dkt. No. 337, Case No. 3:17-cv-03201 (N.D. Tex. Nov. 12, 2018) ....................8

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993) ....................6

*Nike, Inc. v Wal-Mart Stores*,
138 F.3d 1437 (Fed. Cir. 1998) ....................5

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010) ....................6

*Ringers Techs., LLC, v. George Harmer*,
Dkt. No. 143-10, Case No. 4:18-cv-4347 (S.D. Tex. Nov. 22, 2021) ....................8

*Rogers v. Tristar Prods.*,
793 F. Supp. 2d 711 (E.D. Pa. 2011), *vacated on other grounds,* 449 Fed. Appx. 921 (Fed. Cir. 2011) ....................6, 8

*Sofpool LLC v. Kmart Corp.*,
2013 WL 2384331 (E.D. Cal. Mar. 29, 2013) ....................6

*Top Brand LLC v. Cozy Comfort Co.*,
2021 WL 1121122 (N.D. Ill. Mar. 24, 2021) ....................5, 6, 8

## INTRODUCTION

Hollyren's marketing expert, Dr. Gal, has been retained to provide his expert opinion regarding consumer reaction to Lashify's 'patented' marketing strategy. Dr. Gal is not a patent expert. He will not opine on patent coverage and will not provide any opinions about patent law. There is no need for Dr. Gal to do so. Hollyren's false patent marking case is based on the *timing* of the advertisements as compared to the date the patents issued, *i.e*., Lashify falsely advertised its products as 'patented' before it held a single patent. This requires no analysis of the scope of any patents. The Court did not take issue with this methodology during the hearing on Lashify's motion to exclude Dr. Gal. *See* Dkt. No. 267 at 39:40:15. The only issue that the Court raised during the hearing was whether a design patent counted for purposes of false patent marking. *Id*. at 43:20-22 (the Court: "I think the defendant is incorrect that only utility patents count with respect to marking. . . . But I don't know that anyone . . . has really briefed that issue . . . ."). The Court ordered supplemental briefing on the distinction between a design and a utility patent in the context of false patent marking. *Id*. at 44:3-23.

To clarify, Hollyren's position is *not* that only utility patents count with respect to false patent marking. If Lashify advertises the ornamental design of a product when it holds a design patent, there is no false patent marking. On the other hand, the law is clear that false patent marking is actionable in the instances where Lashify advertised the *functional* aspects of a product (namely, its Fuse Control Wand) at a time when Lashify held only a *design* patent on that product. As a matter of law, a design patent does not and cannot cover functional aspects. In any event, this design/utility distinction only matters for a small portion of Lashify's advertisements. For three of the four products at issue in Lashify's advertisements, Lashify held *no patent* (either design or utility) at the time it published advertisements touting the product's 'patented' status. Hollyren will show that Lashify claimed these three products were "patented" long before the products were

patented. Because the design/utility distinction does matter with respect to false patent marking, and because that distinction only comes into play for a small subset of the advertisements at issue, Lashify's motion to exclude Dr. Gal should be denied.

**BACKGROUND**

Hollyren retained a marketing expert, Dr. David Gal, to evaluate Lashify's marketing strategy and the consumer response to 51 Instagram advertisements in which Lashify advertised that it held a "patent" on various products *prior to* the time that a patent on the associated product issued. *See* Dkt. No. 138-2 (Gal Report) at ¶74 ("I conclude that for several years *before* Lashify actually had any U.S. patents, it used the 'patented' marketing strategy[.]") (emphasis added). For example, in his expert report, Dr. Gal stated that "as of December 16, 2020, Lashify's website advertised that its bonds and sealers were 'patented formulas' . . . I understand, however, that Lashify did not receive a patent on its artificial eyelash bond until October 11, 2022. Thus, Lashify publicly represented on its website that its bond was patented nearly two years *before* actually receiving a patent." *Id*. at ¶76 (emphasis added).[1]

Lashify moved for summary judgment on Hollyren's false patent marking counterclaim (Dkt. No. 140) and moved to exclude the testimony of Dr. Gal on the ground that he is not qualified to offer opinions about whether Lashify engaged in false patent marking (Dkt. No. 138-1 at 3).[2] In

---

[1] It is undisputed that Lashify did not hold a patent, of any type, on its bond until October 11, 2022. This fact will be established at trial through percipient witnesses.

[2] The Court denied Lashify's summary judgment motion as to false patent marking. *See* Dkt. No. 330 in Case No. 6:22-cv-776 (consolidated with this case for pretrial purposes) at p. 1. Earlier in the case, Lashify moved to dismiss Hollyren's false patent marking counterclaim for failure to state a claim, including because it held a design patent on the Fuse Control Wand. *See* Dkt. No. 64 at 6, n.2. Magistrate Judge Gilliland declined to dismiss the claim, finding that Lashify's advertisements constituted actionable false patent marking. *See* Dkt. No. 105 (Report and Recommendation) at 4. The Court adopted Judge Gilliland's recommendation. *See* Dkt. No. 111.

its response to these motions, Hollyren clarified that Dr. Gal would offer no opinions on patent law and that patent expertise is not necessary for Dr. Gal's opinions because the theory of falsity is *timing*: "Expertise in patents is not required to compare the date of an advertisement for a product against the date a patent issued for the product." Dkt. No. 165 (Hollyren's Opp. to Daubert Motion) at 2. It is not disputed that the *earliest-issued* U.S. patent for each of the Lashify products at issue in the advertisements is as follows[3]:

| | Lashify Product | Issue Date | Patent No. | Type of Patent |
|---|---|---|---|---|
| 1 | Design of the Fuse Control Wand (wand / applicator) | 03/27/18 | D814,107 | Design |
| 2 | Artificial eyelash (gossamers) | 05/26/20 | 10,660,388 | Utility |
| 3 | Lash System / Utility of the Fuse Control Wand | 11/19/19 | 11,172,749 | Utility |
| 4 | Bond (Charcoflex formula) | 10/11/22 | 11,466,182 | Utility |

*See* Dkt. No. 177 (Hollyren's Opp. to Lashify's Summary Judgment Motion) at p. 4. It is undisputed that the utility patents noted in rows two through four of the table above were the first patents issued (of any type) on Lashify's gossamers, system, and bond. In other words, Lashify did not hold a design patent on those products prior to issuance of the utility patents. It is also undisputed that, although Lashify held a design patent on the Fuse Control Wand as of March 27, 2018 (row 1), it did not hold a utility patent on the wand until November 19, 2019 (row 3).

During the hearing on Lashify's motion to exclude Dr. Gal, the Court agreed that patent

[3] Lashify did not dispute that this table shows the earliest-issued U.S. patent for the associated products. The only U.S. patent that Lashify has ever raised as pre-dating the advertisements at issue in Dr. Gal's analyses is U.S. patent D814,107, which is a design patent on the Fuse Control Wand. *See* Dkt. No. 140-1 at 2 (Lashify's Motion for Summary Judgment on False Patent Marking) at 2 (identifying US Patent D814,107). Lashify has not disputed, and cannot dispute, that the design patent on the wand covers only the ornamental aspects of Lashify's Fuse Control Wand. Although Lashify also raised two foreign patents (*id.*), it is undisputed that those foreign patents are also design patents on the Wand. Three design patents (one U.S. and two foreign) on the *Fuse Control Wand* are *the only patents that Lashify has ever raised* in defense of Hollyren's false patent marking counterclaim.

expertise is not needed to compare the date of a 'patented' claim against the date a patent issued:

> "[Hollyren's] methodology is that – even I can do this. The advertisement's on June 1st of 2018, and the patent – no patents. There are no patents that could cover this until July 1st of 2018. You know, my eight-year-old could do that, probably. Now, what is – why is that not correct?"

Dkt. No. 267 at 39:10-15. This prompted the following exchange at the hearing:

- Lashify: "There were patents before the date." *Id*. at 39:20-21.
- The Court: "do those patents cover what's in the advertisement?" *Id*. at 39:22-23.
- Lashify: "Lashify certainly believes that they do . . . . they're pointing to a distinction on utility patents versus design patents." *Id*. at 39:24- 40:2.

It appears from this exchange, that two issues may have gotten confused at the hearing: (1) whether Lashify held a design patent on each product in the advertisements at issue; and (2) whether the design patent covers what is in the advertisement. Lashify's statements from the hearing (reproduced above) misleadingly suggested that Lashify did hold a design patent on each product at the time it published its advertisements and that the advertisements related to the design of the product (*i.e.*, the patents covered what's in the advertisement). As set forth herein, however, neither of those things is accurate. The Court ultimately ordered supplemental briefing on the utility/design patent distinction:

> "I think the defendant is incorrect that only utility patents count with respect to marking. And, therefore, if the methodology that the defendant's expert used was to say, I'm going to look at when the products were marked and if they – if there was not yet a utility patent, then that's false patent marking, I believe that that would be not an appropriate methodology. But I don't know that anyone . . . has really briefed the issue of whether or not that's correct."

*Id*. at 43:20-44:6. *See also id*. at 44:7-17 (ordering supplemental briefing on the issue of whether a distinction between utility and design patent matters for purposes of false patent marking).

## ARGUMENT

Each of Lashify's Instagram posts advertising a 'patented' product can be put into one of four different buckets based on the product being advertised: (1) Gossamers (artificial lashes); (2) lash system; (3) bond (glue or sealer); and (4) Fuse Control Wand ("Wand"). *See* Dkt. No. 138-2 (Gal Report) at Exhibit E (table of Lashify's advertisements at issue in false patent marking claim categorized by product being advertised). It is undisputed that for three of these four products, (*i.e.*, Gossamers, system, and bond), Lashify *did not hold any type of patent at the time it published its advertisement*. In other words, when Lashify advertised those three products (gossamers, system, and bond) as being "patented," Lashify did not hold a utility patent *or* a design patent. No Lashify patent for those products existed. Period. As a result, the falsity of Lashify's "patented" advertisement (*i.e.*, no patent on that product existed) can be verified very simply by comparing the date of the "patented" advertisement against the date that the first patent for that product issued.[4] No patent expertise is required for this analysis. *See* Dkt. No. 267 (The Court agreed that "my eight-year-old could do that.").

For the fourth product that Lashify advertised as "patented," the Wand, it is undisputed that Lashify held only a *design patent* at the time it published the allegedly false patent marking advertisements at issue.[5] It is also undisputed that Lashify did not hold a utility patent on the Wand at that time. The law recognizes the distinction between design and utility patents for purposes of false patent marking. *See, e.g.*, *Top Brand LLC v. Cozy Comfort Co.*, 2021 WL 1121122, at *6

[4] Lashify does not dispute that the utility patents shown in the table on page 3 above were the *earliest issued* patents (of any type) for these three products. The dates that these patents issued will be introduced through percipient witnesses.

[5] Dkt. No. 178-8 (Exh. 13 to Hollyren's Opp. to Lashify's Summary Judgment Motion on False Patent Marking) (Lashify's March 27, 2018, design patent on the Wand).

(N.D. Ill. Mar. 24, 2021) (courts apply an "ordinary observer test to determine whether a design patent covered an alleged unpatented article for purposes of a false patent marking claim") (collecting cases).[6] Case law also clarifies that, if the other elements of a false patent marking claim are satisfied, it constitutes false patent marking to advertise the *functionality* of a product as being "patented," when the patentee only holds a *design patent*.[7]

For example, in *Rogers v. Tristar Prods.*, 793 F. Supp. 2d 711, 714 (E.D. Pa. 2011), *vacated on other grounds,* 449 Fed. Appx. 921 (Fed. Cir. 2011), the false patent marking defendant marketed a Power Juicer line of products on its website and other advertisements. In its advertisements, defendant marketed the "Power Juicer Products as having 'Special Patented Extraction Technology' that 'delivers up to 30% more juice than other juicers." *Id.* at 714. "For example, television infomercials aired that refer to the Power Juicer products as having 'Patented Extraction Technology,' 'Patented Extraction Technique, 'Patented 3600 RPM Super Extraction Motor, and similar patented technology." *Id.* "Notwithstanding the representations made in defendant's advertisements," however, "the only patent held for the Power Juicer line . . . covers

[6] In its briefing on this issue, Lashify argued that "Section 292 makes no distinction between design and utility patents." *See* Dkt. No. 241 (Lashify's Reply in Support of its Summary Judgment Motion on False Patent Marking) at p. 8. The only case that Lashify cited in support, however, is *Nike, Inc. v Wal-Mart Stores*, 138 F.3d 1437 (Fed. Cir. 1998). But *Nike* dealt solely with the Section 287 notice requirement for a patentee to receive damages for infringement. *Nike* has nothing whatsoever to do with Section 292 or false patent marking and did not hold that Section 292 makes no distinction between design and utility patents.

[7] This is necessarily the case because a design patent by definition and as a matter of law cannot cover the functional or utilitarian aspects of a product. *See, e.g.*, *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) ("we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article"); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1120 (Fed. Cir. 1993) ("A design patent is directed to the appearance of an article of manufacture."); *Top Brand*, 2021 WL 1121122, at *1 (A design patent "must claim an ornamental design, not one dictated by function."); *Sofpool LLC v. Kmart Corp.*, 2013 WL 2384331, at *4, n.5 (E.D. Cal. Mar. 29, 2013) ("by law, the design patent only covers the ornamental aspects of the design").

the products' design aspects only." *Id*. The patent "did not cover any of the Power Juicer's lines' technology or address functional aspects such as juice extraction." *Id*. "Put another way," the design patent had "nothing to do with any of the above-mentioned patent references made in defendant's advertisements." *Id*. As such, the court held that the "complaint plainly establishes that defendant violated the statute [*i.e*. §292] by falsely advertising the Power Juicer products as patented when they had no patent covering the product as stated." *Id*. at 716, n.4.

Similarly, in *Airhawk Int'l, LLC v. TheRealCraiJ*, *LLC*, 2017 WL 3891214 (C.D. Cal. Jan. 19, 2017), Airhawk advertised on its website that "Airhawk International's comfort seating system uses a *patented air technology* to distribute a rider's weight, eliminating those troublesome 'hot spots." *Id*. at *2 (emphasis added). At the time, however, Airhawk did "not have any patents covering air technology." *Id*. At most, Airhawk had "a few design patents covering the ornamental non-functional features of certain designs." *Id*. Again, the court distinguished between a design and a utility patent for purposes of a false patent marking claim and permitted this claim to go forward. *Id*.

As this law clarifies, if Lashify advertised that the functional features of its Wand are "patented" before it held a utility patent on the Wand, it constitutes false patent marking (if the other elements of a Section 292 claim are met) notwithstanding the design patent for the Wand. As a marketing expert, Dr. Gal has the expertise to evaluate an advertisement and determine whether the advertising message to the consumer portrays functionality of an advertised product or its design. For example, Lashify's Ad No. 16, dated August 2, 2019, advertised as follows:




Dkt. No. 138-2 (Gal Report) at ¶84 (highlighting and emphasis added). With respect to this ad, Dr. Gal's opinion is that Lashify claimed "in advertising that the utilitarian functions of the wand were 'patented'." *Id*. It is undisputed that Lashify published this advertisement ***before*** Lashify received a utility patent on the Wand.[8] Of course, Lashify will claim that this advertisement does not claim the utilitarian function of the Wand with its own marketing expert, Dr. Joachimsthaler.

The jury will then decide whether that the Wand advertisements tout, or do not tout, utilitarian functions, but the determination of whether an advertising message relates to functionality is a question of fact upon which Dr. Gal's marketing expertise will be helpful. The Court will then instruct the jury regarding the law. Hollyren has proposed a jury instruction, based on the Model Design Patent Jury Instructions, distinguishing between a design patent, which, by definition, covers only ornamental design, and a utility patent.[9] In addition, Hollyren has proposed

[8] The March 2018 design patent on the Wand, the November 2021 utility patent on the Wand, and the advertisements regarding the Wand will be introduced through percipient witnesses. Dr. Gal assumes that a design patent covers only ornamental aspects and not functional aspects of a product. Exploring an expert's assumptions is classic expert cross-examination fodder.

[9] Specifically: "There are two basic types of patents in the United States: utility patents and design patents. In general terms, a "utility patent" protects the way an article is used and works. It also protects a method or process of making or doing something. On the other hand, a "design patent" protects the way an article looks. A design patent is directed to the ornamental design for an article of manufacture. "Ornamental design" means the shape of the design, and/or the surface decoration on the design." IPO Model Design Patent Jury Instructions No. 1.1. *See also Ringers Techs., LLC, v. George Harmer*, Dkt. No. 143-10, Case No. 4:18-cv-4347 (S.D. Tex. Nov. 22, 2021) at

a jury instruction tracking the law that, for purposes of false patent marking, a design patent does not excuse advertising claiming that a system, technology, or other functional aspects of a product are patented.[10] Dr. Gal will not interpret the design or utility patents, nor will he testify about this law to the jury. It is for the Court to instruct the jury regarding the law.

Dr. Gal's role in this case will be to testify as a marketing expert about Lashify's marketing strategy and consumer reaction to it. Specifically, he will testify that, to gain competitive benefits, Lashify engaged in the marketing strategy of claiming that its products were patented, when they were not, while simultaneously characterizing competitors, including Hollyren, as counterfeiters and copyists. Dr. Gal will testify regarding the consumer exposure to the 'patented' statements using standard Instagram engagement analyses.[11] Dr. Gal will also testify regarding the competitive harm caused by this strategy, in the form of consumer comments on Lashify's advertising statements reflecting tarnished reputation, diminished goodwill, and lost sales.

**CONCLUSION**

Dr. Gal's opinions regarding Lashify's "patented" marketing strategy and the consumer

---

Instruction I.A.(i); *Ford Global Techs., LLC v. New World Int'l, Inc*., Dkt. No. 337, Case No. 3:17-cv-03201 (N.D. Tex. Nov. 12, 2018) at Instruction 2.

[10] Specifically: "Advertising statements regarding functional aspects of a product (i.e., how the product is used and works) covered only by a design patent may constitute false patent marking if the other elements of the false patent marking claim are met." *Top Brand LLC v. Cozy Comfort Co*., 2021 WL 1121122; *Airhawk Int'l, LLC v. TheRealCraigJ,* 2017 WL 3891214; *Rogers v. Tristar Prods*., 793 F. Supp. 2d 711 (E.D. Pa. 2011).

[11] As the sources relied on by Lashify's marketing expert, Dr. Joachimsthaler, recognize, Instagram engagement is a well-known metric for gauging "how well . . . content resonates with an audience." Dkt. No. 166-2 at p. 3 (article cited in Dr. Joachimsthaler Report, Fn. 191). "Instagram engagement refers to a measure of how many people are interacting with your content." *Id*. "It considers details such as your follower count along with interactions such as likes, comments, saves, and shares." *Id. See also* Dkt. No. 166-3 at p. 4 ("likes are just one of Instagram's many metrics that can be used to measure your success") (Dr. Joachimsthaler Report, Fn. 193); Dkt. No. 166-5 at p. 6 ("Engagement rate measures how many people interacted with your Instagram content.") (Dr. Joachimsthaler Report, Fn. 170).

response to it are squarely within Dr. Gal's wheelhouse and will be helpful to the jury. Dr. Gal will not testify regarding patent law, nor will he interpret patents or testify regarding what products patents cover. For these reasons, Hollyren respectfully requests that the Court deny Lashify's motion to exclude Dr. Gal.

Dated: October 17, 2024

Respectfully submitted,

By: *Mark A. Miller*
Hui Shen
Payton Elizabeth George
**DORSEY & WHITNEY LLP**
1401 New York Ave. NW, Suite 900
Washington DC, 20005
Telephone: (202) 442-3000
Email: shen.hui@dorsey.com
Email: george.payton@dorsey.com

Mark Miller
Brett Foster
Tamara Kapaloski
**DORSEY & WHITNEY LLP**
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7373
Email: miller.mark@dorsey.com
Email: foster.brett@dorsey.com
Email: kapaloski.tammy@dorsey.com

Geoffrey M. Godfrey
Erin Kolter
Connor J. Hansen
**DORSEY & WHITNEY LLP**
701 Fifth Ave., Suite 6100
Seattle, Washington 98104
Telephone: (206) 903-8800
Email: godfrey.geoff@dorsey.com
Email: kolter.erin@dorsey.com
Email: hansen.connor@dorsey.com

Sarani Rangarajan Millican
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402
Telephone: (515) 451-4731
Email: millican.sarani@dorsey.com

Paige Arnette Amstutz
Robert Pierce Earle
Texas State Bar No. 00796136
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Fax: (512) 495-6399
Email: pamstutz@scottdoug.com
Email: rearle@scottdoug.com

*Counsel for Defendant and Counterclaim-Plaintiff Qingdao Hollyren Cosmetics Co., Ltd. d/b/a Hollyren*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on October 17, 2024, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/ Mark A. Miller*